IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHAKEENA KING, *on behalf
of herself and a class of similarly situated
individuals*,

          Plaintiff,

v.                                                                                Civil Action No. 3:17cv761

**CORELOGIC CREDCO, LLC,**

          **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Corelogic Credco, LLC's ("Corelogic") Motion to Transfer Venue to the Southern District of California (the "Motion to Transfer"). (ECF No. 8.) Plaintiff Shakeena King responded, and Corelogic replied. (ECF Nos. 11, 12.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons that follow, the Court will grant the Motion to Transfer.

### I. Factual and Procedural Background

#### A. Factual Background

Corelogic is a California limited liability company that conducts business as a consumer reporting agency and "reseller" of consumer reports. (Compl. ¶ 9, ECF No. 1.) As a reseller of

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. King alleges a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, (the "FCRA").

consumer reports, Corelogic assembles and merges information contained in the databases of the three nationwide consumer reporting agencies: Experian, Equifax, and TransUnion (the "CRAs"). Corelogic then resells this information to third parties in a so-called "tri-merged credit report." (*Id.* ¶ 3.)

King is a Virginia resident. On January 31, 2016, King applied for a mortgage loan with NVR Mortgage. NVR Mortgage requested a copy of her credit report from Corelogic. The same day, Corelogic furnished to NVR Mortgage a tri-merge credit report containing information Corelogic obtained from Experian, Equifax, and TransUnion. The tri-merge credit report that Corelogic furnished "attributed many derogatory accounts to [King], including a judgment, a medical collection account, a car repossession, a mortgage account," and several charged-off credit card accounts. (*Id.* ¶ 24.) King contends that the information Corelogic furnished was inaccurate because the derogatory accounts belonged to her sister.

King asserts that Corelogic furnished the inaccurate information because of its "failure to implement and follow reasonable procedures to assure that the information it was publishing regarding consumers, like [King] was as accurate as possible." (*Id.* ¶ 26.) According to King, "[i]f Corelogic had reasonable procedures (or any procedures whatsoever) it could have easily determined that the information it published regarding Plaintiff was incorrect and belonged to her sister." (*Id.* ¶ 27.) King further alleges that information Equifax reported to Corelogic did not match King's personal identifiers in important and obvious ways, such as name, social security number, and birthdate, which "should have alerted Corelogic to the fact that the information" did not relate to King. (*Id.* ¶ 28; *see also Id.* ¶¶ 29–30.) King states she was "denied a mortgage loan because [Corelogic] simply regurgitated the inaccurate information to

2

[NVR Mortgage], without reviewing the information to make sure that it belonged to [King]." (*Id.* ¶ 5.)

King's Complaint alleges one count styled as a class action: a violation of 15 U.S.C. § 1681e(b).[2] King contends that Corelogic failed to adopt reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports. Specifically, King asserts that Corelogic "blindly publish[ed] the information it received from the CRAs even when [the information] did not match the name, date of birth, or social security number that [Corelogic's] customer submitted when requesting the report." (*Id.* ¶ 49.) King asserts that Corelogic's conduct was "willful and carried out in reckless disregard for a consumer's rights under the FCRA" because "Corelogic has actual knowledge of [the credit reporting problems], but deliberately ignores the problems because reviewing and/or cross-checking the data would reduce its 'bottom line.'" (*Id.* ¶¶ 41, 38.)

As it relates to Corelogic's procedures, King contends that Corelogic "obtain[s] consumer reports from the CRAs to resell them without any policies or procedures in place to assure that information it receives is accurate and actually belong[s] to the consumer of interest of its customer." (*Id.* ¶ 31.) King alleges that Corelogic "blindly accepts" the information it obtains, and "regurgitates" that information into its tri-merge reports "without any procedure to verify that the information is accurate." (*Id.* ¶ 32.) King asserts that Corelogic uses an "automated process" to flag personal identifier variations, but still "resells any information that it obtains from the CRAs, even when these flags are present." (*Id.* ¶¶ 34–35.) King claims that Corelogic used this "automated process" and faulty procedures in her case and, "[c]onsistent with its

---

[2] Section 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

3

standard policies," furnished her inaccurate credit report to NVR Mortgage "without any additional review of the flagged information." (*Id.* ¶¶ 36–37.)

King seeks to certify a nationwide class consisting of:

> [a]ll natural persons who were the subject: (1) of a consumer report furnished by [Corelogic] to a third party within the five years preceding the filing date of this Complaint; (2) where the personal identifying information section of its consumer report contained a name, date of birth, or social security number that: (i) did not match the information provided by the person requesting the report or[,] (ii) varied from the information provided by the other consumer reporting agencies.

(*Id.* ¶ 43.)

### B. Procedural History

On November 14, 2017, King filed her class action complaint. (ECF No. 1.) Corelogic answered on January 25, 2018, denying any wrongdoing. (ECF No. 7.) The same day, Corelogic filed the Motion to Transfer. (ECF No. 8.) The matter was fully briefed, (ECF Nos. 11, 12), and on April 11, 2018, the judge previously presiding over the case recused himself. The case was randomly reassigned. (ECF No. 13.)

### II. Analysis

Corelogic moves to transfer venue under 28 U.S.C. § 1404(a)[3] to the United States District Court for the Southern District of California.[4] Corelogic argues that the Southern

---

[3] Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

[4] Corelogic argues alternatively that the matter should be reassigned to a different judge within this division because of its similarity to cases previously presided over by two judges within this division. Because the case was reassigned, albeit for a reason different than the one argued by Corelogic, that portion of the briefing is moot and the Court will not address it.

4

District of California constitutes the "clear center of gravity" for this putative class action claim challenging the procedures Corelogic utilizes in compiling tri-merge credit reports. (Mem. Supp. Mot. Transfer 1, ECF No. 9.) King opposes transfer, asserting that her choice of forum is entitled to substantial weight, and that Corelogic fails to "demonstrate any evidence of burden [from litigating in the current forum] that would justify a transfer of this case." (Resp. Mot. Transfer 2, ECF No. 11.) King further contends that Corelogic's transfer request amounts to cost shifting, and that Corelogic would be "in a much better position [than King] to absorb th[e] costs" of litigating in a non-home jurisdiction. (*Id.* at 10–11.)

### A. Legal Standard

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer a case rests in the district court's sound discretion. *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). A court determining the propriety of a motion to transfer under § 1404(a) follows a two-step inquiry. *Bascom Research, LLC v. Facebook, Inc.*, 2012 WL 12918407, at *1 (E.D. Va. Dec. 11, 2012). First, the court determines whether the claims could have been brought in the transferee forum. *Id.* Second, the court considers the following four factors: "(1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Id.* A court's decision to transfer depends on the particular facts of the case, because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor. *Samsung Elecs. Co., LTD. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 716 (E.D. Va. 2005).

## B. The Court Will Transfer This Case to the Southern District of California

Under the facts of this case, transfer to the United States District Court for the Southern District of California should commence. Although the Eastern District of Virginia is King's home forum, her choice of forum receives less weight in this putative class case. *Byerson*, 467 F. Supp. 2d at 633. Furthermore, the Eastern District of Virginia is not home to the nucleus of operative facts, decreasing the weight the Court gives to King's choice of forum. *Samsung*, 386 F. Supp. 2d at 716. The convenience to the parties and witnesses strongly favors transfer, as does the interest of justice. Because the balance of the factors weighs in favor of transfer, the Court will grant the Motion to Transfer.

### 1. King Could Have Brought Her Claim against Corelogic in the Southern District of California

King correctly concedes that "this case could have been brought in the Southern District of California." (Resp. Mot. Transfer 4.) Corelogic nevertheless carries the burden of establishing the propriety of the transfer request. *Bascom*, 2012 WL 12918407, at *1. Even absent King's concession, Corelogic establishes that this claim could have been brought in the Southern District of California.

In order to demonstrate that an action could have been brought in the proposed transferee forum, the movant must establish that both venue and jurisdiction are proper for each defendant. *Koh*, 250 F. Supp. 2d at 630. The federal venue statute, 28 U.S.C. § 1391, provides that "a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). The statute further provides that a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c).

Corelogic attaches the Declaration of Mercedes Vela, a Corelogic employee with "historical knowledge of [Corelogic's] practices and procedures relating to the preparation of [its] tri-merge statements, as well as its operations, employee training, and quality control processes that are utilized in connection with the tri-merge statements." (Vela Decl. ¶ 3, ECF No. 9-1.) Vela affirms that Corelogic has its principal place of business in San Diego, California, and is incorporated in Delaware.[5] Because San Diego is within the Southern District of California, this case could have been brought in that district.

### 2. The Four Factors in the Second Aspect of a Court's § 1404 Test Weigh in Favor of Transfer

Courts must next evaluate four factors when assessing whether or not to transfer the case. For the reasons articulated below, the Court finds that these factors weigh transfer.

#### a. King's Choice of Forum is Not Entitled to Substantial Weight in this Nationwide Putative Class Action Case

Under most circumstances, "[t]he plaintiff's choice of forum is . . . entitled to substantial weight, but the level of deference of such choice varies with the significance of the contacts between the venue chosen by the plaintiff and the underlying cause of action." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011). When "the plaintiff's choice of forum is neither the nucleus of operative facts, nor the plaintiff's home forum, the plaintiff's choice is accorded less weight." *Samsung*, 386 F. Supp. 2d at 716. Further, a court often will "give less weight to the plaintiff's choice of forum in class actions." *Byerson*, 467 F. Supp. 2d at 633. This is so because "[i]n class actions, . . . 'there will be numerous potential plaintiffs,

---

[5] The Court notes that Corelogic is named as an LLC, not a corporation, and Vela's sworn statements appear to indicate that it is a corporation. Of course, because the Court exercises jurisdiction pursuant to 28 U.S.C. § 1331, Corelogic's citizenship is not relevant for jurisdictional purposes. Nor does Corelogic's status as an LLC or a corporation become dispositive for purposes of the Motion to Transfer. Accordingly, the Court need not resolve this apparent inconsistency.

each possibly able to make a showing that a particular forum is best suited for the adjudication of the class'[s] claim.'" *Id.* (quoting *Eichenholtz v. Brennan*, 677 F. Supp. 198, 202 (S.D.N.Y. 1988)). Nevertheless, when a forum is home both to the plaintiff and to key non-party witnesses, the plaintiff's choice of forum, even in a class action, garners significant weight. *Id.* In this case, because the gravamen of the Complaint stems from Corelogic's procedures for gathering and furnishing consumer reports, and not the circumstances surrounding King's denial of a mortgage loan, the Court will give less weight to King's choice of forum.

Corelogic shows via affidavit that little evidence relating to its procedures for furnishing consumer reports exists in Virginia. Corelogic indicates that it provides tri-merge credit reports in all fifty states, and has issued only 2.73% of its total reports in Virginia. Further, only 1.80% of Corelogic's customers have a Virginia business address.[6] Finally, Corelogic maintains no data servers in Virginia, and has no offices or employees in Virginia. In contrast, the vast majority of Corelogic's employees are located in the Southern District of California: 214 of Corelogic's 322 employees (or 67%) work out of San Diego. Further, all but one of Corelogic's executive leadership team and management-level employees are based in the Southern District of California.

King concedes that a plaintiff's choice of forum generally is given less weight in class actions, but nevertheless argues that her forum choice should receive greater weight in this case. King contends that "[t]he operative events in this case occurred in Virginia," pointing to her application for and denial of a mortgage loan with NVR Mortgage. (Resp. Mot. Transfer 5–6.)

---

[6] The Court makes no presumption that Corelogic conducts most of its business in California. Given Corelogic's nationwide presence, Virginia's 2% could reflect that Corelogic conducts an average amount of business in Virginia relative to other states. The amount of business Corelogic conducts in Virginia, however, does not constitute the only factor the Court considers in determining whether to transfer this case.

According to King, her sister, boyfriend, and friend constitute important witnesses, all of whom "are expected to testify about the damages" King suffered from Corelogic's inaccurate tri-merge report. (*Id.* at 12.) She also asserts that Kelly Ernest, her loan application witness, would "provide details about the denial of her loan application." *Id.* King argues that, given the allegedly automated process Corelogic employs in compiling its tri-merge reports, "the location of [Corelogic's] office and IT personnel become significantly less important." (*Id.* at 7.)

When a plaintiff's choice of forum is amenable to inexpensive discovery and trial because it is home both to the plaintiff and to key non-party witnesses, then such a choice—even in a class action—is entitled to significant weight. *Byerson*, 467 F. Supp. 2d at 633. In this case, although the Eastern District of Virginia is King's home forum, it does not house "key non-party[7] witnesses." *Id.* As King admits, "the critical evidence in this case will likely center on the documentation of [Corelogic's] matching algorithm and other policies and procedures." (Resp. Mot. Transfer 7.) Although King argues that this evidence can easily be "produced electronically in Virginia with minimal burden or cost," the nucleus of operative facts in this putative nationwide class action clearly exists in the Southern District of California, where the majority of Corelogic's business and employees operate. King's choice of forum, although usually given significant weight, should receive less deference in this case.[8]

---

[7] Party witnesses are defined as "the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum." *Samsung*, 386 F. Supp. 2d at 718. Under this definition, the Court cannot find that the witnesses King identifies—her sister, friend, and boyfriend—constitute non-party witnesses. Although Ernest would qualify as a non-party witness, nothing before the Court indicates that she would be a *key* witness in this putative class action challenging the procedures Corelogic employs in furnishing credit reports.

[8] King cites several cases, arguing that "[i]n similar cases, including class cases, the Court has accorded plaintiff's venue choice with deference and refused transfer." (Resp. Mot. Transfer 5.) The "similar cases" on which King relies can be distinguished in important ways.

9

### b. The Convenience of the Parties Weighs in Favor of Transfer

The party convenience factor "includes assessment of the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process." *Byerson*, 467 F. Supp. 2d at 633. When weighing this factor, "the logical starting point is a consideration of the residence of the parties." *Mullins v. Equifax Info. Servs., LLC*, 2006 WL 1214024 (E.D. Va. Apr. 28, 2006). However, "residence is not a controlling factor if the convenience of witnesses and the interest of justice point strongly in a contrary direction. *Id.* As the analysis shows, this factor weighs slightly in favor of transfer.

#### i. Ease of Access to Sources of Proof Weighs in Favor of Transfer

The heart of King's case is a challenge to the procedures Corelogic utilizes to create its tri-merged credit reports. As Corelogic has shown, the majority of this information—including documents and witnesses—exists in San Diego, California, within the Southern District of California. However, at least some of this need for evidence in the transferee forum can be mitigated through the availability of technology, as the comparatively low cost of transporting

---

The court in *D'Addario v. Geller* gave the plaintiff's choice of forum substantial weight, even in a class action. 264 F. Supp. 2d 367 (E.D. Va. 2003). In *D'Addario*, Virginia was not the home forum for either of the parties, but it was the home for "the underlying action from which" the litigation arose. *Id.* at 391. For that reason, *D'Addario* does not undermine the Court's decision because, as discussed, Virginia does not serve as the nucleus of operative facts in this case.

King also points to *Doe v. Connors*, in which the court accorded strong weight to a class action plaintiff's choice of forum. 796 F. Supp. 214 (W.D. Va. 1992). The *Doe* court found that the "plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant." *Id.* at 222 (quoting *Eldridge v. Bouchard*, 620 F. Supp. 678, 684 (W.D. Va. 1985)). In *Doe*, however, 9,000 of the 118,000 represented beneficiaries lived in Virginia, "not to mention the many thousands who live in nearby West Virginia, Kentucky, and Tennessee," while only 51 lived in the District of Columbia, the forum to which defendant sought transfer. *Id.* at 221–22. The *Doe* court found that those numbers showed a geographic distribution of the parties which weighed overwhelmingly in favor of the plaintiff's choice of forum. In the current case, however, nothing indicates a heavy presence of class members in Virginia or nearby states.

documents "can make their location a less pressing consideration when deciding a motion to transfer venue." *Finkel v. Subaru of America, Inc.*, 2006 WL 2786811, at *4 (E.D. Va. Sept. 26, 2006); *see also NanoEntek, Inc. v. Bio-Rad Laboratories, Inc.*, 2011 WL 6023189, at *4 (E.D. Va. Dec. 2, 2011) (agreeing that "changes in technology have lessened the importance of the court's proximity to physical documentation."). Although this factor does not weigh heavily, given the ease with which information can be transmitted, its consideration remains essential to the analysis. *Id.* Therefore, the ease of access to sources of proof will weighs in favor of Corelogic.

### ii. The Cost of Obtaining Witnesses Weighs in Favor of Transfer

As discussed, because King's putative class claim focuses on Corelogic's processes and procedures in general—not the specific circumstances in King's own case—the majority of relevant witnesses will be Corelogic's employees. Corelogic has identified that it has no data servers, offices, or employees in Virginia, and that the vast majority of Corelogic's employees are located in the Southern District of California. Further, all but one of Corelogic's executive leadership team and management-level employees are based in the Southern District of California.

King argues that Corelogic's "transfer request is simply cost shifting," which constitutes an impermissible basis for transfer. (Resp. Mot. Transfer 10.) King further posits that, given the parties' relative financial strength, "Corelogic is in a much better position to absorb [travel] costs than [King] and her potential witnesses." (*Id.* at 11.) However, transfer in this case does not amount to mere cost shifting because the majority of witnesses and evidence exist in the Southern District of California. Because the nucleus of operative facts in this putative class action challenging Corelogic's processes and procedures lies in the Southern District of

California, where Corelogic's principal place of business exists, it would be more costly to litigate this action in this forum than the transferee forum. The cost of obtaining witnesses weighs in favor of transfer.

### iii. The Need for Compulsory Process Weighs Neutrally

This factor encompasses the need to subpoena witnesses to appear at trial, and requires a showing that "witnesses who are beyond compulsion will not appear . . . voluntarily." *Samsung*, 386 F. Supp. 2d at 719. Although Corelogic has pointed to witnesses who would not be subject to the subpoena power of this Court, and King has identified witnesses who would be outside the subpoena power of the United States District Court for the Southern District of California, neither party has shown that its witnesses would not appear voluntarily. Accordingly, this factor weighs neither for nor against transfer.

### c. Convenience to the Witnesses Weighs Strongly in Favor of Transfer

The party declaring witness inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636. Furthermore, the moving party must elucidate whether the witnesses are willing to travel to a foreign jurisdiction. *Samsung*, 386 F. Supp. 2d at 719. Witness convenience is often dispositive in transfer decisions, assuming that the influence of this factor can be assessed using reliable information which identifies the witnesses involved and specifically describes their testimony. *Koh*, 250 F. Supp. 2d at 636.

The convenience of non-party witnesses "should be afforded greater weight in deciding a motion to transfer venue" in part because party witnesses "are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses."

*Samsung*, 386 F. Supp. 2d at 718. In general, "greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Samsung*, 386 F. Supp. 2d at 718.

The majority of Corelogic's employees are located in the Southern District of California, including all but one of Corelogic's executive leadership team and management-level employees. Because King's putative class complaint challenges the procedures Corelogic uses in furnishing tri-merge reports, Corelogic's employees likely will provide the central testimony in this case. Further, given King's allegation of willfulness, the credibility of the Corelogic employees responsible for developing its procedures will be important. A court can infer "that witnesses who are located at or near the center of the allegedly infringing activities and witnesses involved in the design and manufacture of the accused product are material." *NanoEntek*, 2011 WL 6023189, at *5. It follows that the numerous employees Corelogic identifies in Vela's affidavit constitute material witnesses to this action.

King, on the other hand, identifies her sister, boyfriend, and friend, who are expected to testify about the damage she suffered as a result of Corelogic's conduct. She also identifies Kelly Ernest, her loan application agent, who would "provide details about the denial of her loan application." (Resp. Mot. Transfer 12.) Even assuming that the witnesses King lists constitute non-party witnesses who would be accorded more weight, the importance of their testimony is significantly undermined for two reasons. First, none of King's witnesses' testimony would relate to Corelogic's procedures for furnishing tri-merge credit reports, and would therefore not relate to the core of King's class claim. Second, the testimony of King's sister, boyfriend, and friend could become cumulative because King asserts they would each testify as to King's

13

damages (something that King herself could also testify about), reducing the weight of their testimony. *See Samsung*, 386 F. Supp. 2d at 718.

Corelogic has identified numerous witnesses located in the Southern District of California "whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Samsung*, 386 F. Supp. 2d at 718. Although King points to several witnesses in the Eastern District of Virginia who would provide testimony related to her denial of a mortgage loan and the damages she suffered, none of the witnesses would provide central, non-cumulative testimony to this putative class action challenging Corelogic's procedures. This factor weighs heavily in favor of transfer.

### d. The Interest of Justice Weighs in Favor of Transfer

Lastly, the Court must consider the interest of justice, which "encompasses public interest factors aimed at systemic integrity and fairness." *Byerson*, 467 F. Supp. 2d at 635. The interest of justice weighs particularly heavy in a class action case, as it so significantly implicates the rights of persons who are not actually before the court. *Id.* at 637.

#### i. Systemic Integrity Weighs Neutrally

"Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* at 635. Those factors play an important role in a court's analysis when related cases are pending in a different judicial district. *Id.* Consequently, a court in such a situation would favor transfer in order to avoid inconsistent judgments and the unnecessary exploitation of judicial resources. This Court does not face such a situation in the present action. Therefore, the factor of systemic integrity has no relevance in considering Corelogic's Motion to Transfer.

### ii. Fairness Weighs in Favor of Transfer

In determining whether a fair proceeding requires a transfer of venue, "courts often consider docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Samsung*, 386 F. Supp. 2d at 721. "[D]ocket conditions, although relevant, are a minor consideration[9] . . . which will receive little weight." *Koh*, 250 F. Supp. 2d at 639.

The interest of having local controversies decided at home weighs in favor of transfer in this case, as the heart of the controversy exists in the Southern District of California. "Courts are traditionally willing to transfer cases to the districts in which the events giving rise to the suits occurred." *Finkel*, 2006 WL 2786811, at *5. Because the alleged conduct giving rise to this action occurred in San Diego, California, this factor weighs in favor of transfer.

The knowledge of applicable law weighs neutrally, although King argues that this Court has become well acquainted with FCRA claims over the last fifteen years. However, as the action arises under federal law, "this Court cannot be presumed to have greater knowledge of the applicable law than does the federal court in California." *Byerson*, 467 F. Supp. 2d at 635.

Corelogic argues that "it would be unfair to burden citizens in the Richmond Division with lengthy jury duty," especially because very little of Corelogic's business activity occurs relative to Virginia customers. (Mem. Supp. Mot. Transfer 12.) Indeed, although King's alleged

---

[9] King argues that this case likely will be resolved significantly faster in this Court because the average amount of time between the filing of a case and trial in this district is about 9.8 months, while the Southern District of California averages 32.8 months to resolve a case. Even given King's ties to the Eastern District of Virginia—her home forum—considerations of docket congestion alone cannot defeat the other factors that weigh strongly in favor of transfer.

injury occurred in Richmond, the challenged activity is largely based in California. Therefore, this factor weighs in favor of transfer.[10]

### III. Conclusion

Although King has brought this action in her home forum, alone cannot defeat the Motion to Transfer, especially because her choice of forum receives less weight in this putative class case. *Byerson*, 467 F. Supp. 2d at 633. Furthermore, because the Eastern District of Virginia is not home to the nucleus of operative facts, King's choice of forum is entitled to less weight. *Samsung*, 386 F. Supp. 2d at 716. The convenience to the parties and witnesses strongly favors transfer. Finally, the interest of justice also suggests that transfer is proper. Based on the facts of this case, the balance of the relevant factors weighs in favor of transferring this case to the United States District Court for the Southern District of California.

For the foregoing reasons, the Motion to Transfer will be granted. An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 6/12/18
Richmond, Virginia

---

[10] The interest in avoiding unnecessary conflicts of law does not apply in this case.